*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SERENA ROBINSON,

        Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant,

and

THAKER AZEEZ,

        Defendant-Appellee.

UNPUBLISHED
November 9, 2023

No. 364047
Ingham Circuit Court
LC No. 21-000022-NI

Before: GLEICHER, P.J., and JANSEN and RICK, JJ.

JANSEN, J. (*dissenting*).

For the following reasons, I respectfully dissent. I would affirm summary disposition in favor of defendant because plaintiff failed to meet the threshold injury of a serious impairment of a body function under MCL 500.3135 to recover noneconomic damages on her third-party tort claim.

A party may file a third-party tort claim for noneconomic damages, such as pain and suffering or emotional distress, resulting from an automobile accident under MCL 500.3135(1) of the no-fault act, MCL 500.3101 *et seq*., if the person has suffered "death, serious impairment of body function, or permanent serious disfigurement." The threshold question "should be determined by the court as a matter of law as long as there is no factual dispute regarding the nature and extent of the person's injuries that is material to determining whether the threshold standards are met." *McCormick v Carrier*, 487 Mich 180, 193; 795 NW2d 517 (2010), citing MCL 500.3135(2)(a) (quotation marks omitted). A fact is material to the matter when it is "significant or essential," even if not necessarily outcome-determinative. *Id*. at 194 (quotation marks and citation omitted). To establish a serious impairment of body function, the plaintiff must show "

-1-

'(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life.' " *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018), quoting *McCormick*, 487 Mich at 195. See also MCL 500.3135(5). "Objectively manifested" means "it is observable or perceivable from actual symptoms or conditions by someone other than the injured person." MCL 500.3135(5)(a). A showing of an objectively manifested impairment requires evidence, often medical testimony, that establishes a physical basis for the plaintiff's subjective complaints of pain and suffering. *Patrick*, 332 Mich App at 607. An impairment affects a person's general ability to lead his or her normal life when

> it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident. [MCL 500.3135(5)(c).]

Plaintiff alleges that she suffered injuries to her back, neck, and right knee as a result of the accident. The parties dispute whether any injury was "objectively manifested" to meet the first prong of the test for a threshold injury. *Patrick*, 322 Mich App at 606. In granting defendant summary disposition, the trial court concluded that there was no objectively manifested impairment. I would agree.

Plaintiff testified that she had no history of back, neck, or knee pain (besides scoliosis) before the accident or any history of headaches. Her medical records are to the contrary, demonstrating an extensive preaccident medical history. In 2005, she reported having lower back pain for one to two years, scoliosis, and obesity. In 2006, she reported to the emergency room for headaches. In a 2009 new patient visit, she reported having scoliosis with chronic back pain and migraines. In June 2015, she reported having right knee pain after it "gave out" while walking; she was diagnosed with a knee sprain. A few weeks later, x-rays showed mild degenerative changes of her right knee, she was diagnosed with a possible torn medial meniscus, and was restricted from working for two weeks. In August 2015, she had an injection treatment for back pain and muscle spasms in her back. At the end of 2015, she was seen for thoracic spine pain at the emergency room and prescribed muscle relaxers, an anti-inflammatory, and a topical gel for pain. In 2016, she was again seen for low back pain and reported migraines dating back to 2010.

In February 2018, she reported pain in her back, arms, and neck, aggravated by her job driving a bus. She was excused from work several times in May 2018, with CT scans showing arthritic changes in her spine and a diagnosis of lumbar degenerative disc disease. In 2019, her medical records indicate that she still complained of back pain, neck stiffness, and headaches. In early 2020, she presented with the same complaints, and was diagnosed with a probable partial ACL disruption in her right knee.

Plaintiff did not seek medical care until the day after the accident, August 19, 2020, when she went to an urgent care and reported neck pain and stiffness, back pain, and headaches. She was told to follow up with her primary care physician if she did not improve, and to take a muscle relaxant and Tylenol. The imaging of her spine taken that day had no significant findings besides mild scoliosis. When she followed up with her physician, she requested a referral for pain

management and physical therapy because her prescription pain medication was not working for her back and made her too drowsy. In September 2020, her x-ray results for her knee and spine were "grossly normal except for findings of suggestive muscle spasms."

In November 2020 and early 2021, MRIs of her spine showed small disc bulges and mild facet osteoarthritis. Throughout 2021, based on more MRIs, she was continually diagnosed with mild degenerative changes of her thoracic spine and chronic midline lower back pain. She was treated with several injections and a rhizotomy with radiofrequency ablation, as well as osteopathic manipulation medicine. She was excused from work from the date of the accident up to April 26, 2022.

The majority opinion ignores plaintiff's independent medical examination by Dr. Randolph B. Russo, who upon reviewing plaintiff's medical history, concluded that there was no evidence of an ongoing medical condition related to the subject accident. There was no indication for any continued treatment related to the accident, and no reason for plaintiff not to resume normal activities without limitations. He concluded that "[a] transient increase in her chronic low back pain can occur. Some soft tissue thoracic pain is not uncommon, but would resolve rather quickly. The contusion to her knees also is not associated with a pathologic change in the knees that requires more aggressive medical treatment." Dr. Russo also attested that plaintiff was not suffering from any ongoing medical condition related to the accident—at most she sustained a temporary strain of her back or neck that would have resolved shortly thereafter, which would be secondary to her longstanding degenerative issues. He also attested that none of plaintiff's treating physicians directly attributed her subjective complaints of pain or injuries to the accident.

Plaintiff failed to produce any objective evidence by any of her medical providers that connected her injuries to the subject accident. The medical records solely indicate her subjective complaints of pain that she attributed to the accident. "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested. Medical testimony is generally, but not always, required to make this showing." *Patrick*, 322 Mich App at 607 (citation omitted). Plaintiff produced no affidavit or testimony by any of her medical providers or any expert attributing her injuries to the accident. Rather, her medical history demonstrates that she had chronic pain and degenerative changes for years before the accident occurred. Although "the aggravation or triggering of a preexisting condition can constitute a compensable injury," *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009), plaintiff denied having any preexisting back, neck, or knee pain at her deposition, testifying that she had no chronic illnesses, even though her medical records were to the contrary. Moreover, plaintiff produced no evidence that any of her medical providers concluded that the accident aggravated any preexisting condition. Therefore, there is no genuine issue of material fact that plaintiff's injuries were not objectively manifested, and she cannot meet the first prong of the *McCormick* threshold injury test. Therefore, I would conclude that the trial court properly granted defendant summary disposition under MCR 2.116(C)(10).

/s/ Kathleen Jansen